**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SLOAN MANNING,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OFFICE OF PERSONNEL MANAGEMENT,<br><br>Defendant. | Civil Action No. 25-0342 (CKK) |

**MEMORANDUM OPINION**
(September 29, 2026)

Sloan Manning, a former employee at the Internal Revenue Service, filed this action against the Office of Personnel Management ("OPM"), alleging that OPM subjected him to sex and disability discrimination by contracting with a health insurance carrier that refused to cover part of his medical treatment. Mr. Manning brings claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"); Section 1557 of the Affordable Care Act, 42 U.S.C. § 18116 ("Section 1557"); the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq.* ("Rehabilitation Act"); the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("ADA"); and various provisions of the United States Constitution.

Currently before the Court is OPM's [10] Motion to Dismiss in Part. OPM seeks to dismiss Mr. Manning's claims under Section 1557, the ADA, and the Constitution. OPM does not seek to dismiss Mr. Manning's claims under Title VII or the Rehabilitation Act. Upon consideration of the parties' submissions,[1] the relevant legal authority, and the entire record, the Court shall

[1] The Court's consideration has focused on the following documents, including the attachments and exhibits thereto:

- The Plaintiff's Corrected Complaint ("Compl."), Dkt. No. 3.
- The Defendant's Motion to Dismiss in Part and Memorandum in Support Thereof ("Def. Mot."), Dkt. No. 10.

**GRANT** the requested relief. Mr. Manning's claims under Section 1557, the ADA, and the Constitution will be dismissed, while Mr. Manning's claims under Title VII and the Rehabilitation Act will proceed.

## I. BACKGROUND

### A. Factual History

For over ten years, from 2010 to January 2021, Mr. Manning worked as a federal employee for the Internal Revenue Service, a division of the United States Department of Treasury. Compl. ¶ 40. As a federal employee, Mr. Manning maintained health insurance through Aetna, who operated as the third-party administrator of his Federal Employee Health Benefit ("FEHB") plan. Compl. ¶ 20.

In 2012, Mr. Manning was diagnosed with gender dysphoria and "decided to legally, medically, and socially transition from female to male." Compl. ¶ 42. As part of his transition, Mr. Manning sought "male chest reconstruction surgery, [which] consists of a bilateral mastectomy and nipple areola reconstruction," and has the "overarching . . . goal" of affording the patient a "male-typical chest." Compl. ¶ 47. In January 2015, Mr. Manning's doctor submitted a pre-authorization request to Aetna. Compl. ¶ 49. Aeta approved coverage for Mr. Manning's bilateral mastectomy. Compl. ¶¶ 49-50. However, although Aetna ordinarily provides coverage for nipple-areola reconstruction when a "nontrans woman" has a double mastectomy, Aeta denied Mr. Manning's coverage for a nipple-areola reconstruction. Compl. ¶ 52. Mr. Manning submitted an internal appeal to Aetna, but, in a letter on May 11, 2015, Aetna upheld its decision to deny coverage for Mr. Manning's nipple-areola reconstruction. Compl. ¶ 55.

---

- The Plaintiff's Opposition to the Defendants' Partial Motion to Dismiss ("Pls.' Opp'n"), Dkt. No. 11.
- The Defendant's Reply in Further Support of its Motion ("Def.'s Reply"), Dkt. No. 12.

In an exercise of its discretion, the Court concludes that oral argument is not necessary to the resolution of the issues pending before the Court. *See* LCvR 7(f).

On May 15, 2015, Mr. Manning underwent male chest reconstruction surgery. Compl. ¶ 57. Mr. Manning's doctor performed both a bilateral mastectomy as well as a nipple-areola reconstruction on him. *Id.* Because of Aetna's denial of his claim, Mr. Manning and his wife paid for the nipple-areola reconstruction out of pocket. Compl. ¶ 58.

**B. Procedural History**

On or about May 11, 2015, Mr. Manning began the informal Equal Employment Opportunity ("EEO") complaint process with OPM regarding Aetna's denial of coverage for his nipple-areola reconstruction. Compl. ¶ 59. Later that month, an OPM investigator interviewed Mr. Manning via phone with his counsel to take down his complaint. Compl. ¶ 60. On May 26, 2016, OPM issued a Notice of Final Interview and Right to File a Formal Complaint. *Id.*

On June 12, 2015, Mr. Manning filed a formal complaint with OPM. Compl. ¶ 61. On January 11, 2016, OPM dismissed his complaint for failure to state a claim. Compl. ¶ 62. Mr. Manning appealed the dismissal to the Equal Employment Opportunity Commission ("EEOC"). Compl. ¶ 63. On March 6, 2017, the EEOC reversed OPM's dismissal of Mr. Manning's complaint, finding that Mr. Manning stated a claim of discrimination under the EEOC regulations. Compl. ¶ 66. Mr. Manning alleges that OPM has not acted on the EEOC's order. Compl. ¶¶ 63-74.

On April 23, 2021, Mr. Manning filed a notice of appeal to the EEOC seeking enforcement of the EEOC's March 6, 2017, order. Compl. ¶ 75. Mr. Manning alleges that EEOC has not issued an opinion in his appeal. Compl. ¶¶ 79-87.

On February 6, 2025, Mr. Manning filed suit against OPM in this Court, challenging the denial of coverage for the nipple-areola reconstruction surgery. Under the Federal Employees Health Benefits Act, OPM administers the health benefits program to federal employees. Compl. ¶ 15; 5 U.S.C. §§ 8901, 8902(a), 8903. As part of this role, OPM negotiates and contracts with

private insurance carriers to offer health benefits to federal employees through the FEHB Program. *Id.*

Mr. Manning's Complaint alleges four counts, all arising out of OPM's decision to contract with a health provider that did not cover his nipple-areola reconstruction. Count One alleges that OPM engaged in sex discrimination, in violation of Title VII and Section 1557. Compl. ¶¶ 88-98. Count Two alleges that OPM engaged in sex discrimination, in violation of several provisions of the United States Constitution. Compl. ¶¶ 99-114. Count Three alleges that OPM engaged in disability discrimination, in violation of the Rehabilitation Act; the ADA; and Section 1557. Compl. ¶¶ 115-126. Count Four alleges that OPM engaged in disability discrimination, in violation of the United States Constitution. Compl. ¶¶ 127-136.

OPM moves to dismiss Mr. Manning's claims under Section 1557, the Constitution, and the ADA for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Def. Mot. at 4-8. OPM does not move to dismiss Mr. Manning's claims under Title VII or the Rehabilitation Act. *See* Def.'s Reply at 4.

## II. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests whether a complaint states a claim upon which relief can be granted. To withstand such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim clears this hurdle "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). In this analysis, "the Court must construe the complaint in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged." *Hettinga v. United States*, 677 F.3d 471, 476 (D.C.

Cir. 2012) (per curiam) (citation and quotation marks omitted). When resolving a motion to dismiss for failure to state a claim, a court "may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which the court may take judicial notice." *Hurd v. District of Columbia*, 864 F.3d 671, 678 (D.C. Cir. 2017) (citation and internal brackets omitted).

## III. ANALYSIS

Title VII and the Rehabilitation Act prohibit federal agency employers from discriminating against their employees by reason of certain protected characteristics. Whereas Title VII prohibits discrimination based on "race, color, religion, sex, or national origin," 42 U.S.C. § 2000e-2, the Rehabilitation Act prohibits discrimination "solely by reason of [the individual's] disability," 29 U.S.C. § 794(a). Together, "Title VII and the Rehabilitation Act provide the exclusive remedy" for federal employees "for claims of employment discrimination based on race, religion, sex, national origin, and disability." *Lamb v. Millennium Challenge Corp.*, 228 F. Supp. 3d 28, 46 (D.D.C. 2017) (RDM); *see also Husain v. Smith*, No. 15-708, 2016 WL 4435177, at *4 (D.D.C. Aug. 19, 2016) (RDM) ("Title VII provides the exclusive judicial remedy for federal employees who allege that they are victims of workplace discrimination based on their race, color, religion, sex, or national origin, and the Rehabilitation Act provides the exclusive judicial remedy for federal employees who allege that they are victims of workplace discrimination based on disabilities.") (citing *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 835 (1976); *Richardson v. Yellen*, No. 14-cv-1673, 2016 WL 890570, at *9 (D.D.C. Mar. 8, 2016)).

### A. ADA Claims

Mr. Manning claims that OPM violated the ADA by "discriminati[ng] on the basis of [his] physical and mental disability." Compl. ¶ 123. However, "the ADA does not apply to employees of the federal government because the federal government is not considered an 'employer' under

the ADA." *Klute v. Shinseki*, 797 F. Supp. 2d 12, 17 (D.D.C. 2011) (RBW); *see* 42 U.S.C. § 12111(5)(B)(i) (excluding "the United States" from the definition of "employer"). Instead, Congress incorporated the ADA's substantive prohibitions through the Rehabilitation Act, which is "the exclusive remedy for federal employees alleging disability discrimination by a federal agency." *Raines v. U.S. Dep't of Justice*, 424 F. Supp. 2d 60, 65 (D.D.C. 2006) (RMU). Accordingly, the Court will dismiss the ADA claims pursuant to Rule 12(b)(6), while allowing Mr. Manning's parallel claims under the Rehabilitation Act to proceed.

### B. Constitutional and Section 1557 Claims

Mr. Manning argues that OPM engaged in sex and disability discrimination under several provisions of the U.S. Constitution, as well as Section 1557, by contracting with a health provider that did not cover his nipple-areola reconstruction. However, the D.C. Circuit has explained that the Title VII remedy is "exclusive for federal employees . . . [and] precludes actions against federal officials for alleged constitutional violations as well as actions under other federal legislation." *Kizas v. Webster*, 707 F.2d 524, 542 (D.C. Cir. 1983). To that end, a plaintiff may not "recast their Title VII claims as constitutional claims" or otherwise "bring suit under the Constitution for employment discrimination that is actionable under Title VII." *Ethnic Emps. of the Library of Cong. v. Boorstin*, 751 F.2d 1405, 1415 (D.C. Cir. 1985). Similarly, "when a federal employee seeks to redress rights guaranteed by the Rehabilitation Act, that Act preempts other actions to redress the same discrimination." *Welsh v. Hagler*, 83 F. Supp. 3d 212, 222 (D.D.C. 2015) (TSC) (quoting *Paegle v. DOI*, 813 F. Supp. 61, 66–67 (D.D.C. 1993) (JHP)).

Here, Mr. Manning's Constitutional and Section 1557 claims are substantively identical to his Title VII and Rehabilitation Act claims and, accordingly, will be dismissed.

*i. Constitutional Claims*

Mr. Manning clearly attempts to "recast his Title VII claims as constitutional claims." *Boorstin*, 751 F.2d at 1415. As an alternative to his Title VII sex discrimination claim ("Count One"), Mr. Manning brings one count alleging that OPM discriminated against him based on his sex, in violation of the U.S. Constitution ("Count Two"), by contracting with a health insurance carrier that refused to cover the nipple-areola reconstruction surgery. *See* Compl. ¶ 94. However, the allegations in Count Two are identical to those in Count One and even use the same language. *Compare id.* ("OPM discriminated against Mr. Manning because of his sex by denying him fringe benefits without a trans healthcare exclusion.") (Count One), *with* Compl. ¶ 112 ("OPM discriminated against Mr. Manning because of his sex by denying him fringe benefits without a trans healthcare exclusion.") (Count Two). Given the duplicative nature of his allegations, this is not a case in which constitutional claims may proceed because the plaintiff is "suing [his] employer[] for constitutional violations against which Title VII provides no protection at all." *Boorstin*, 751 F.2d at 1415. On the contrary, in this case, Mr. Manning's allegations fall squarely within the reach of Title VII. *See id.*

Likewise, Mr. Manning's disability discrimination claims under the U.S. Constitution ("Count Four") are identical to his claims under the Rehabilitation Act ("Count Three"). *Compare* Compl. ¶ 134 ("OPM discriminated against Mr. Manning because of his disability by denying him fringe benefits without a trans healthcare exclusion.") (Count Four), *with* Compl. ¶ 122 ("OPM discriminated against Mr. Manning because of his disability by denying him fringe benefits without a trans healthcare exclusion.") (Count Three). Because Mr. Manning's Constitutional claims do not raise any claims unrelated to the same actions underlying his Rehabilitation Act claims, his Constitutional claims alleging disability discrimination are also precluded. *See Welsh*,

83 F. Supp. at 222 ("[W]hen a federal employee seeks to redress rights guaranteed by the Rehabilitation Act, that Act preempts other actions to redress the same discrimination.") (citation omitted).

In his Opposition to OPM's [10] Motion to Dismiss in Part, Mr. Manning argues for the first time that his Constitutional claims seek different remedies than his Title VII or Rehabilitation Act claims. *See* Pls.' Opp'n at 11. Ordinarily, the Court "may not consider any new allegations . . . raised for the first time in a plaintiff's opposition to a motion to dismiss." *Pappas v. Dist. of Columbia*, 513 F. Supp. 3d 64, 91 (D.D.C. 2021) (RC). However, even if the Court were to consider this argument, Title VII and the Rehabilitation Act prohibit "parallel actions under . . . other provisions of federal law to redress the *same basic injury*." *Boorstin*, 751 F.2d at 1415 (emphasis added); *see also Welch*, 2016 WL 6806211, at *2 (dismissing claims that "stem from the *same nucleus of facts* as the Rehabilitation Act claim") (emphasis added). Here, as discussed, Mr. Manning's claims arise from the same nucleus of facts: OPM's decision to contract with Aetna, who refused to cover Mr. Manning's nipple-areola reconstruction.[2] Accordingly, Mr. Manning's Constitutional claims will be dismissed.

*ii. Section 1557 Claims*

Mr. Manning's Section 1557 claims suffer from the same problem. Beginning with his sex discrimination claims, Mr. Manning's Section 1557 claims and his Title VII claims appear together under a single header ("Count Three"), with identical allegations. Compl. ¶ 97 (alleging that OPM "violate[d] Title VII of the Civil Rights Act of 1964 *as well as* Section 1557 of the Affordable Care Act, both of which prohibit discrimination on account of sex in employer provided health

---

[2] Moreover, neither Title VII nor the Rehabilitation Act preclude Mr. Manning from receiving equitable or injunctive relief, as he alleges. *See* 42 U.S.C. § 2000e-5(g) (Title VII providing for equitable and injunctive relief); 29 U.S.C. § 794a(a)(1) (providing that the remedies established in Title VII discrimination cases against the government are available in Rehabilitation Act cases).

plans.") (emphasis added). Given that Mr. Manning brings the same allegations under both Title VII and Section 1557, Mr. Manning clearly seeks to bring "parallel actions under both Title VII and other provisions of federal law to redress the same basic injury," which he cannot do because the Title VII remedy is "exclusive." *Boorstin*, 751 F.2d at 1415.

Mr. Manning's disability discrimination claims under Section 1557 also appear under the same header as his Rehabilitation Act allegations. *See* Compl. ¶ 123 (alleging that OPM "violate[d] the Rehabilitation Act . . . and Section 1557 of the Affordable Care Act [both] of which prohibit discrimination on the basis of physical and mental disability"). Nowhere does Mr. Manning allege any injury under Section 1557 that he does not also allege under Title VII or the Rehabilitation Act. Accordingly, Mr. Manning's Section 1557 claims are foreclosed by the fact that "Title VII and the Rehabilitation Act provide the exclusive remedy for claims of employment discrimination based on race, religion, sex, national origin, and disability." *Lamb*, 228 F. Supp. 3d, at 46.

*iii. Whether Section 1557 of the ACA provides a cause of action against OPM.*

OPM urges the Court to hold more broadly that Section 1557 of the ACA can *never* provide a cause of action against OPM. Def. Mot. at 7-8. In support of its position, OPM cites the Regulations implementing Section 1557, in which the Department of Health and Human Services ("HHS") stated that the HHS Office of Civil Rights ("OCR") "will refer to OPM complaints alleging discrimination in the FEHB Program," and "[t]his Rule does not determine how or whether any other agency will investigate or enforce any matter referred or transferred by OCR." Nondiscrimination in Health Programs and Activities, 89 Fed. Reg. 37,522, 37,627 (May 6, 2024). At least one district court has held, as OPM urges, that "§ 1557 does not provide a basis for bringing

suit against OPM itself." Mem. Op. at 14, *Doe v. OPM*, No. 24-cv-2371 (N.D. Cal. Dec. 19, 2024), ECF No. 26.

However, the Court need not reach the broader question that OPM presents because Mr. Manning brings identical allegations under Section 1557 as under Title VII and the Rehabilitation Act. Where, as here, a plaintiff pleads identical allegations under Section 1557 as under Title VII or the Rehabilitation Act, Title VII and the Rehabilitation Act clearly preclude the Section 1557 claim. *See Husain*, 2016 WL 4435177, at *4 ("Title VII provides the *exclusive* judicial remedy for federal employees who allege that they are victims of workplace discrimination based on . . . sex, [and] the Rehabilitation Act provides the *exclusive* judicial remedy for federal employees who allege that they are victims of workplace discrimination based on disabilities.") (emphasis added). Because Mr. Manning's Section 1557 claims are plainly subsumed by his parallel claims under the Title VII cause of action, the Court need not decide whether Section 1557 could afford a cause of action to a different plaintiff proceeding on a different set of facts and allegations.

Accordingly, given that Mr. Manning's claims all arise from the set of facts—OPM's decision to contract with Aetna—the Court will dismiss all of Mr. Manning's claims except those arising under Title VII and the Rehabilitation Act.

## IV. CONCLUSION

For the foregoing reasons, the Court shall **GRANT** Defendant's [10] Motion to Dismiss in Part. An appropriate Order accompanies this Memorandum Opinion.

**Dated:** September 29, 2026

Colleen Kollar-Kotelly

COLLEEN KOLLAR-KOTELLY
United States District Judge